# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 05-0020-LRR |
| vs. | **ORDER** |
| RONALD DONELSON, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

III. TRIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  MOTION FOR JUDGMENT OF ACQUITTAL . . . . . . . . . . . . . . . . 7

V.   MOTION FOR NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I. INTRODUCTION

The matters before the court are Defendant's Motion for New Trial and Renewed Motion for Acquittal (docket no. 56) and Defendant's Addendum to Motion for New Trial and Renewed Motion for Acquittal (docket no. 63). They are resisted.

## II. PROCEDURAL BACKGROUND

On March 2, 2005, the Grand Jury returned a one-count Indictment against Defendant. The Indictment charged Defendant with unlawful possession of a firearm and ammunition after having been previously convicted of a felony offense, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On April 1, 2005, Defendant filed a Motion to Suppress. Defendant sought to exclude evidence of an out-of-court identification of Defendant by a witness, Janelle Givens. After a hearing on April 7, 2005, Chief Magistrate Judge John A. Jarvey filed a Report and Recommendation that the Motion to Suppress be denied. On April 26, 2005, the court adopted the Report and Recommendation and denied the Motion to Suppress.

Defendant's jury trial was held on May 2 through May 4, 2005. Defendant twice moved for judgment of acquittal—once at the close of the government's case-in-chief and again at the close of all evidence. The court denied both motions. On May 4, 2005, the jury returned a unanimous guilty verdict.

On May 11, 2005, Defendant filed the instant Motion for New Trial and Renewed Motion for Acquittal (docket no. 56). On May 20, 2005, the government filed a resistance (docket no. 57). The court held a hearing on the Motion for New Trial and Renewed Motion for Acquittal on July 21, 2005. Defendant was personally present with his attorney, Richard Pazdernik. Assistant United States Attorney Robert Teig represented the government.

On August 3, 2005, Defendant filed an Addendum to Motion for New Trial and Renewed Motion for Acquittal (docket no. 63). Neither party requested another hearing. The court concludes an additional hearing is not needed. Finding the motion fully submitted and ready for decision, the court turns to consider it.

## III. TRIAL EVIDENCE

At approximately 3:30 a.m. on August 14, 2004, Defendant was at the World Theater with his girlfriend, Deborah Page. The World Theater is an after-hours club in Cedar Rapids. Jenelle Givens was also at the World Theater with a number of friends and family members, including Christopher "Country" Gantt and Sherron Smith, who is Givens' sister. After Page verbally abused Givens, four or five separate fights broke out between Defendant and his friends and Gantt and his friends.

When the police arrived at the World Theater, the fights broke up and the crowd dispersed. Givens, Smith, Gantt and another person drove to Givens' residence at 1226 Second Avenue SE, Cedar Rapids. (The residence is near the corner of Second Avenue SE and Twelfth Street SE.) The group walked in back of her residence, sat on a grassy strip near the alley and drank more alcoholic beverages.

A noise caused Givens, Smith and Gantt to turn around. They saw a black male running toward them shooting a firearm. Givens ran around a truck parked in a nearby alley and got under it. As she ran, Givens was shot in the foot. She laid under the truck until someone came looking for her. No one else was hurt.

At about 3:37 a.m., Cedar Rapids Police Officer Tracy Schmidt was sitting in his marked squad car at the stoplight on First Avenue and Twelfth Street SE. Officer Schmidt heard a series of popping noises, which he recognized to be small-caliber gun fire, coming from the southeast. Officer Schmidt went down Twelfth Street and saw a man, later identified as Gantt, running west on Second Avenue. Officer Schmidt stopped his squad car and yelled "Police! Stop!" Gantt stopped.

Gantt appeared very nervous and shaken up. Gantt had seen the squad car during the shooting and ran toward it. Gantt told Officer Schmidt someone had fired shots at him and his friends. Gantt pointed to someone running across the street and said, "There he

3

is!" Officer Schmidt could see that the person Gantt had identified as the shooter was a black male in a red shirt.

The shooter ran across Second Avenue (in the 1200 block) and headed south. After crossing Second Avenue, the shooter looked toward Officer Schmidt and Gantt, looked forward, and continued running. Officer Schmidt last saw the shooter as he ducked between two houses. Officer Schmidt immediately radioed dispatch that the shooter was running south across Second Avenue. He broadcast the direction of travel so squad cars in the area monitoring the dispatch channel could try to locate the shooter.

Officer Nick Nolte responded to Officer Schmidt's dispatch. He observed and stopped a black male in the 300 block of Fourteenth Street wearing a red top and long black pants. The subject was cooperative. He was not sweating and was not out of breath. Officer Nolte took his name and let him go.

Officer Nolte saw headlights in an alley between Fourth Avenue and Fifth Avenue. He saw a person pop out of the bushes just to the right of the alley and then disappear. Officer Nolte walked to the alley and saw Officer Herbert and Officer Estling with Defendant. Defendant was sweating profusely. The officers[1] had come to the neighborhood without their lights or siren on to search for the shooter. When they neared the intersection of the alley between Fourth and Fifth Avenue and Fourteenth Street (near the Willis Dady Center), they saw Defendant, a black male with a red shirt, walking next to a house on the south side of the alley. When Officer Herbert and Officer Estling approached, Defendant walked into the lit portion of the alley. Defendant did not come running toward them.

Officers Herbert and Officer Estling got out of their car. They ordered Defendant

---

[1] Officer Herbert and Officer Estling had also responded to Officer Schmidt's dispatch.

4

to come to them and put his hands in the air. He was sweaty, out of breath, startled that the police were there, and looked tired. Initially, Defendant did not ask for help or state anyone was trying to kill him. Within five minutes of the time shots were fired, Defendant was found near the scene of the crime.

Defendant consented to a search of his person. During the search, Defendant told the police he had been running for his life. Defendant admitted he had an altercation downtown and was thankful the police were present. Defendant's speech was slurred, he had bloodshot and watery eyes, he smelled of alcohol and he admitted that he had been drinking. The officers arrested Defendant and took him to the police station.

At the police station, an officer read Defendant his *Miranda* rights. Defendant claimed that he ran away because he was afraid they would beat him up. Defendant admitted that he had gotten into a fight with Gantt and "his people" at the World Theater. Defendant was wearing a red shirt and blue shorts.

Meanwhile, Officer Schmidt went to the scene of the shooting to determine if anyone had been injured. He pulled into the alley behind 1226 Second Avenue SE and found Givens limping and favoring her left leg. Givens told Officer Schmidt that she had been shot in the foot. Officer Schmidt observed a small puncture wound in her foot. Givens was taken to the hospital to obtain treatment for her gunshot wound.

At the hospital, Givens told the police she knew the person who shot her by his street name, "Wick." Wick had been at the World Theater earlier that morning. She described him as a black male with a goatee and braided hair. Givens also picked Defendant out of a six-man photo-spread given to her at the hospital, and identified him as the shooter.[2]

---

[2] Givens, however, disagreed when testifying during trial about the location of
(continued…)

Three days after the shooting, Givens gave the police a signed, written statement. Givens indicated Wick was the shooter, he was wearing a red shirt at the time of the shooting, but he had a jersey on at the World Theater. According to Givens, Wick wore the same shorts at the time of the shooting as he wore at the World Theater. Givens said she was standing in the alley behind 1226 Second Avenue SE when Wick came from behind 1230 Second Avenue SE. She stated that, after Wick stopped shooting, he ran back towards her residence and then south towards Second Avenue and south beyond Second Avenue. By the time of trial, Givens' recollection of events was clouded.[3]

Smith described the shooter as a black man wearing black or dark shorts and a red shirt. Smith stated the shooter came off the side of a garage where her car was parked. At a one-person show-up the police arranged after Defendant was apprehended, Smith indicated Defendant's clothing was consistent with the shooter's clothing, except she did not think the shooter was wearing white tennis shoes.

Because Officer Schmidt had originally advised that the shooting suspect had run south from where the incident occurred, other police officers searched the alley in the area where Defendant was apprehended, looking for a firearm. The officers found a firearm, .22 caliber shells and two clips in the general area of the Willis Dady Center. Officers also discovered shell casings near the crime scene. An expert later matched the distinguishing markings in the barrel of the firearm to markings on the shell casings. The expert opined that the shell casings were fired from the recovered firearm.

---

[2](…continued)
Defendant's photograph in the photo-spread.

[3] For example, at trial Givens testified the shooter had on a white T-shirt. She also testified she did not remember ever saying the shooter wore a red shirt and did not remember seeing a red shirt.

An expert also testified the firearm and ammunition had traveled in interstate commerce before August 14, 2004.

### IV. MOTION FOR JUDGMENT OF ACQUITTAL

The rules of criminal procedure state

> the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

Fed. R. Crim. P. 29(a). However, it is well-settled that "[j]ury verdicts are not lightly overturned." *United States v. Hood,* 51 F.3d 128, 129 (8th Cir. 1995); *see also United States v. Lopez*, 384 F.3d 937, 943 (8th Cir. 2004); *United States v. Burks*, 934 F.2d 148, 151 (8th Cir. 1991). A judgment of acquittal should only be granted "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999). In determining whether to grant a motion for judgment of acquittal, the court may not weigh the evidence or evaluate the credibility of witnesses, as that task lies exclusively within the province of the jury. *United States v. Ireland*, 62 F.3d 227, 230 (8th Cir. 1995).

Defendant contends the government's evidence was not sufficient to support a finding of guilt by a reasonable jury and, accordingly, his motion for judgment of acquittal presently before the court should be granted. In considering a motion for judgment of acquittal based on the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997). The court "can overturn a jury's verdict only if 'a reasonable fact-finder must have entertained a reasonable doubt about the government's

proof of one of the offense's essential elements.'" *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir. 1995) (quoting *United States v. Nunn*, 940 F.2d 1128, 1131 (8th Cir. 1991)). Moreover, "[t]his standard applies even when the conviction rests entirely on circumstantial evidence." *United States v. Davis,* 103 F.3d 660, 667 (8th Cir. 1996).

Viewing the evidence as set forth above in the light most favorable to the guilty verdict and giving the government the benefit of all reasonable inferences, the court finds there is sufficient evidence in the record to support the jury's verdict. It was the responsibility of the jury to evaluate the credibility and testimony of the witnesses. Defendant's argument does not raise a doubt so persistent as to cloud the presumed validity of the jury's verdict. It is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence. *See United States v. Swayne,* 700 F.2d 467, 472 (8th Cir. 1983). It is enough that the entire body of evidence be sufficient to convince the fact-finder beyond reasonable doubt of the defendant's guilt. *See id.* Accordingly, the court will not overturn the jury's verdict as to Count I of the Indictment; Defendant's Motion for Judgment of Acquittal is denied.

## V. MOTION FOR NEW TRIAL

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *See United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). However, "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also Ortega v. United States*, 270 F.3d

540, 547 (8th Cir. 2001) (noting a district court may grant a new trial under Rule 33 "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred").

The Eighth Circuit Court of Appeals has noted district courts enjoy more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29. *Campos*, 306 F.3d at 579. That said, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Id.* District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *see also* Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 553 (3d ed. 2004) (stating that granting a new trial under Rule 33 is an unusual remedy reserved for "exceptional cases in which the evidence preponderates heavily against the verdict").

The court finds Defendant has established no legal basis for a new trial. First, Defendant argues the evidence preponderates heavily against the verdict. This argument lacks merit. The circumstantial and direct evidence is sufficient to sustain the verdict. Clearly, the evidence does not preponderate heavily against the verdict.

Second, Defendant contends the Assistant United States Attorney improperly stated in closing argument that Defendant made his statement about running for his life after sitting in the squad car and thinking up the story. Reviewing the record, the court finds no such argument was made.

Third, Defendant argues that alleged juror misconduct requires a new trial. The Defendant maintains there was improper contact between a juror and a spectator in the courtroom who was associated with Defendant. The district court has broad discretion in handling allegations of juror misconduct. *See, e.g.*, *United States v. Tucker*, 243 F.3d 499, 509 (8th Cir. 2001); *United States v. Williams*, 77 F.3d 1098, 1100 (8th Cir. 1996).

The contact has not been shown to be prejudicial to Defendant. The court also notes that Defendant did not object to the contacted juror remaining on the case at the time of the incident. If Defendant had objected, the court could have seated alternate jurors.

Fourth, Defendant claims his counsel was deficient because he did not call certain witnesses. There is nothing in the record regarding who the witnesses are or what their testimony would have been. Therefore, there is nothing for the court to review.

Fifth, Defendant claims that evidence of the shooting should not have been admitted. There was no other way for the United States to attempt to prove its case without fully relating the evidence surrounding the shooting on August 14, 2004. Consequently, this argument lacks merit.

In sum, Defendant has not met his burden in showing a new trial is warranted; Defendant's Motion for New Trial is denied.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** Defendant's Motion for New Trial and Renewed Motion for Acquittal (docket 56) and the Addendum to Motion for New Trial and Renewed Motion for Acquittal (docket 63) are **DENIED**.

**SO ORDERED.**

**DATED** this 9th day of September, 2005.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA